May it please the Court, Paul Klavan on behalf of Appellant and I would like to reserve two minutes for rebuttal please. The District Court in this case erred by summarily dismissing the motion without an evidentiary hearing because the record in the case did not conclusively establish that the motion failed to meet statutory requirements. We have a case where my client Rafael Quiroz is serving a life sentence and there was no evidentiary hearing even though two people said that he did not commit the crimes for which he has been convicted. So what do I have in this record that it suggests that the testimony of Roberto or of the attorney would differ from the declarations presented? Because it seems to me that the District Court made this decision saying okay I'll assume what they say is true and nonetheless I am going to decide this motion. Well your honor that I mean I'm trying to say what is there that they would have said that would have said more than the record? Well your honor that is the standard but the the court actually didn't follow that the court. Well just a minute it seems to me that you're not really arguing the record isn't accurate or adequate but you're arguing the judge did not make his decision on that basis right? Right because he. That he reviewed the evidence and rejected it. Yes. Well that really doesn't say he needs a evidentiary hearing that says he misappropriated or misreviewed the evidence doesn't it? Well that also your honor but. Well it seems to me that then we're not really thinking about whether they needed an evidentiary hearing but whether he reviewed the evidence correctly. I mean I'm trying to understand your argument because I thought the judge went through taking I mean he said in reviewing the probative force of the new evidence and to the extent the which the facts are alleged in the declaration if taken as true nonetheless and you say no the nonetheless is wrong so I don't know why the hearing would have been necessary. Well the here two things one. I can get to the point where he may be wrong and we'll talk about that but I don't know why the hearing was necessary. The hearing would be helpful your honor because part of the argument of the government is that there wasn't enough detail in for example Roberto Quiroz's declaration that's something that if there was an evidentiary hearing Mr. Quiroz would be put on the stand and the council could go through all of the trial and Mr. Quiroz would be subject to cross-examination. That would allow both the court and the government to see what the evidence was and to determine whether or not it was enough to show that the conviction should be should be reversed. That's what an evidentiary hearing would allow in terms of Roberto. In terms of Ernesto Plancarte I agree with your honor that the show up and testify. And we don't even know if that'll happen. Well we we're assuming that'll happen and that's again the the standard is that the court should assuming that the that the movement in fact could establish the truth of the facts contained in the declarations that in fact what the question is whether that would be enough in order to. Well I guess I have the same issue with it that Judge Smith I think is is struggling with and that is that aside from the brother maybe clarifying some things in his affidavit which you would have had the opportunity to do by means of a clearer affidavit I'm not really sure what what a hearing would accomplish. What else are there other witnesses you would have called or? Your honor these at this point these would be the the two primary witnesses that we plan to call and again the same the same ones that have the affidavits. Right yeah. And as again in terms of Roberto that he would be able to fill in more of the details that the government claims are not provided in the declaration so that we could show that in fact there was that Mr. that my client Rafael was probably innocent of the crimes. Here we have the main. Is that the standard or is the standard that no reasonable jury or juror would have convicted? What's the standard? Well your honor and it's it's this is a an area where it's the standard is it has not been quite established yet but in the in the Carriger case and more more recently in the Gemello case this court has said that in in cases where you have a freestanding actual innocence claim that the showing has to be more than just undercutting the evidence but show that the person is probably innocent and that's the standard that was used again. Carriger they distinguish between the freestanding and the gateway innocence claim. Gemello just looked looking at the the actual innocence claim specifically cited Carriger for the idea that a credible confession by the actual perpetrator of the crime was exactly the sort of evidence. With the emphasis on credible. I'm sorry your honor. With the emphasis on credible. Credible right but your honor in this case we have Roberto and again the the government and the the district court tended to minimize that because he wouldn't be because he there might be a statute of limitations issue however he's been a fugitive all these years and so particularly in connection with the state crimes that he is he was fugitive from state crimes initially all that time would be told in terms of any sort of straight state prosecution so he would be he would be exposing himself to jeopardy by returning to constitutional error in the underlying trial right well that was the initial that was an initial part of the claim your honor was the ineffective assistance of counsel having to do with well i understand that but as far as the error of the trial it seems to me that you're really not saying under the first theory of bringing this claim if you will that's the you have to have procedurally barred claims and that constitutional errors occurred at trial i don't think we have any of those here do we uh other than based on the that's right your honor based on on the ruling and uh the uh the certificate of appealability that we have here we're not dealing with that and the trial and so therefore i have to go to the second theory on the second or successive uh are you suggesting that that is what the we ought to base this on on that standard or review well i mean i'm thinking even that this isn't really a second or successive but that we're on the third theory actual innocence is a freestanding claim that that was how it seems to be even what you've already argued that's right in character well no court has accepted such a claim as cognizable have they well they've assumed the ninth circuit and the supreme court have both assumed that such claims are recognized no they didn't assume they said if it is so we'll we'll rule this they didn't ever say that it is legally cognizable they said we don't know whether it is but we we'll just say it is and then we'll give you some help isn't that what they did that is right what they did your honor they they said the if it is cognizable uh this is what you would have to show and and your honor is correct that they haven't found such a showing in this case though as i say we've got the uh the credible confession which uh well i'm trying before you get to that i'm to me that it if i go with that you must at least meet the preponderance of the evidence standard right what in character maybe further maybe more than that in carriger they seem to be saying it was schlup which is preponderance with a little more because they distinguish between the gateway innocence so then it should meet an extraordinarily high standard they do they do cite that your seem to apply as i say the uh probably innocent standard that's that's used in both um uh carriger and more much more recently in gemello and then in the moors case again and again all those cases look to the uh idea that uh credible confession is uh is significant and your honor i see that yes you you may save that and we'll add a minute to it since we used it up with questions thank you your honor we'll hear from the government good morning your honors kathy cervaceous i'm a representing the united states in this case i was also the trial attorney at mr kiros's trial so i'm familiar with the case from from the ground up um let me let me ask you the following question i want you to assume that uh we review everything in the way most generous to the defendant that is that we would review de novo and that all he has to show is that he's shown by a preponderance of the evidence probably innocent would we even under that assumption um reject his claims because of evidence in the case and if so what is that evidence yes your honor in this case and when it comes either to the 2255 h1 claim um of of actual innocence or if it comes to a freestanding actual innocence claim the supreme court in this court has made clear that it's a probabilistic analysis it's a holistic analysis you're taking the evidence that was provided by the defendant that's what i'm asking you tell me tell me why we should view the evidence in such a way that it's in the government's favor ultimately even if we apply the most favorable standard that has been requested if looking at roberto's declaration it's very clear that he wasn't familiar with the charges that were um that that rafael was convicted of essentially roberto claimed that he had purchased or leased all the properties that the labs were located on not his brother there was only one laboratory that was even attributed to rafael quiros and that was one that mr plancardi who was one of the prime witnesses against the defendant had no knowledge of the defendant um rafael quiros was in the country he purchased the property in paris california his brother-in-law was found there cooking methamphetamine and there were all kinds of ties of rafael quiros to both that property and in fact mr quiros himself admitted that he had purchased that property and ties both um to the individuals who were involved in making methamphetamine at the property and the financial transactions i take it also are inconsistent with the brothers claims yes your honor there was financial information that was provided when sutter county and mr clan plan cardi testified that he and his fingerprint was found at that lab and he testified that he was cooking there on behalf of rafael quiros there were other individuals that plan cardi identified as well and during searches of those people's properties back at the time of the laboratory's discovery um those individuals had phone numbers for rafael quiros and those individuals had wired money to rafael quiros and mr quiros when confronted with with that evidence admitted that he had received those wire transfers from those individuals but he couldn't remember the reason why they were being sent so there was other evidence that connected um mr quiros to both the conspiracy to mr plan cardi and to the drug activity some of it connected him with with his brother plan cardi testified that both roberto and rafael would on occasions work together and on occasions they would not and that he worked for both there was another informant in an independent investigation who worked for the irs in mexico and he testified that mr quiros both roberto rafael and some of the other brothers had come to mexico to exchange money and so he testified that the brothers had admitted that they were involved in drug trafficking and he identified mr quiros as one of the individuals who was involved and i think they exchanged approximately two hundred thousand dollars in u.s currency and that it was rafael quiros who told that informant that he wanted to set up a money exchange in los angeles so they wouldn't have to bring it across the border so this is the type of evidence that isn't accounted for in roberto's declaration in addition roberto's declaration fails to even set forth his competence to know what his brother was involved in when he wasn't involved with roberto so all he would say is that rafael quiros had a ranch in mexico but rafael he said he says at one point sort of generically my brother wasn't involved in methamphetamine or something like that i mean he has a sort of general my brother's an innocent nice guy correct but if if he's not in constant communication with rafael quiros how would he know what mr quiros is involved in when he's not around and so that doesn't that doesn't undercut plan cardi's testimony that there were times when rafael quiros was involved in meth manufacturing and roberto was not working with him does the court have any other questions so as to plan carte what do we say about his recantation i think what the court has to treat it as is somebody would testify that plan cardi claimed that he made up that rafael was responsible not that plan cardi recanted but it's more of an impeachment statement that at a later time plan cardi said what i said wasn't true and when evaluating that claim once again the court has to take into account the timing of it circumstances of it and the likely effect it would have at a trial if the testimony was by this unknown as i understand his statement it was said to an unidentified relative is that so yes your honor and that he refused to come forward himself according to the relative and he originally said that both the defendant and roberto did the crime and now he changes to only roberto is that it that's what the unknown relative claims so if that if the unknown relative were to testify at the trial in light of all the evidence that was presented at the original trial what would the likely effect be on a juror would no juror be able to convict the defendant in light of the fact that 10 years later mr plan cardi gave an excuse as to why he testified the way he did and i think that that's what um the district court was evaluating and what the standard is could no juror convict if this additional evidence was before it at trial well i think i think we also have cases that talk about the suspect nature of late recantations and that is something that goes to the reliability of the new evidence and that's something that the district especially here with plan cardi and that he's now served his um that he lived with trying to explain or perhaps curry favor as to the government made him do it so i think that although even assuming there was an actual innocence claim that was freestanding this is one of those cases that the court has repeated repeatedly found that the evidence isn't sufficient even in carriger that was both the gatekeeping claim and a freestanding claim and although the this court found that credible um that a credible confession was sufficient for the gate keeping claim even that was not sufficient for a freestanding claim in light of the other evidence at trial it's also my understanding that there was really no evidence that any of the meth labs were on leased property that's correct some of the admitted that there were um several residences in the united states that he had leased at various times these residences became part of the government's evidence is showing that the other conspirators were in connection or in relation with mr kiros during the time of the activities however the only properties that the government had presented is evidence at trial mr kiros actually admitted that he leased the residences but no labs were found on them and that the residents where the lab was found that he had been the one to purchase it the paris property correct i also understand i'm just trying to make sure because i'm trying to compare the affidavit to what i think the evidence was that there was no evidence that the military id or the passport or the residency card or the work permit were ever used to engage in the transactions of the drug conspiracy correct the only time identification became an issue and distinguishing between both roberto's and rafael's was with wire transfers and it would be very clear which identification was used either the fake rafael kiros which was roberto or rafael's in addition there were transaction currency transaction reports that indicated that roberto kiros had used that identification but again that evidence wasn't ever attributed to rafael kiros and was never even connected to the conspiracy so in this case although roberto is attempting to take all responsibility for the crime given the fact that his confession has so many errors or inconsistencies with the trial evidence and the fact that it is so general it just isn't the type of reliable evidence that would be sufficient to support a freestanding claim or a claim under 22 55 h1 thank you counsel thank you mr clavin thank you your honor regarding mr plan carte what uh what the declaration in the affidavit shows is that he originally was just testifying uh it was just had information about roberto but the government wasn't interested in that information roberto they didn't know where he was they had my client uh in custody and that is the nature of the claim is that the government was only going to give him the significant reduction in sentence from 30 years down to 10 years if he uh identified rafael and not the brother roberto and so all of the evidence was focused on rafael uh from mr plan carte and although the government said that there was other evidence uh circumstantial evidence mr plan carte was the one that the government relied on to show how the whole organization worked and he was the one what you're really arguing it seems to me is he lied the first time to get a deal and so this is good evidence we ought to rely on yes your honor because uh it seems a little tough for me to say he lies the first time to get a deal but now he doesn't lie anymore when he has now served his sentence uh it only can't i mean i'm just having a tough time with that idea well he's certainly exposing himself to uh to perjury charges uh by coming up and and testifying to the contrary your honor how do we evaluate the reliability or me how do we evaluate the reliability or the credibility of of this statement that playing cardi is made to a relative who's made to an attorney who's presented to the court that it's sufficient to warrant the relief that you request well again the the just court they're supposed to consider what the uh what the uh movement would be able to show if everything were true obviously we have to get mr plan carte uh here to testify about this and that's something that that has to be dealt with down the line but in terms of what he would be able to say uh we need to assume that in fact he would he would say that and even though the court has expressed reluctant uh concerns about recantation testimony alone in this case the recantation is reinforced by the confession of roberto who has not testified before should we should we evaluate uh plank cardi's proposed testimonies the government has suggested as potential impeachment um from the the uh unidentified relative well yeah it would be impeaching his own testimony and also uh uh reinforcing the uh the testimony of roberto and what happened with the district court is that after rejecting completely the plank cardi testimony the court then used that also to undercut the uh the confession of roberto and even though again uh the government said well the uh there's different uh testimony in terms of the property but the government's focus was on on uh rafael and so whether there were other properties that were leased by roberto uh they didn't focus on that they focused on the one property that in fact and that's the paris property right your honor that do you agree though that some of roberto's affidavit or declaration the statements in that are incorrect and when compared to the evidence presented at trial well again for the most part there there wasn't a focus on who uh who leased the property or who owned it except when uh when they could pin it on uh on rafael the government was not trying to show that roberto was doing anything that was that was contrary to their interest the defense council to some extent was trying to uh trying to suggest that but there was not much to go on there were a few the few times where there was this identity uh issue it wasn't connected specifically to rafael and so it really didn't amount to much of anything in terms of undercutting the government's case thank you counsel your time has expired thanks the case just argued is submitted we appreciate very much the arguments of both councils
judges: Graber, N.R. Smith, Zipps